IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAYA STEPHENS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:24 CV 1703 |
| | ) |
| v. | ) District Judge Cathy Bissoon |
| | ) Magistrate Judge Maureen P. Kelly |
| GATEWAY SCHOOL DISTRICT, *et al.,* | ) |
| | ) Re: ECF Nos. 14, 103, 121 |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

I.  **RECOMMENDATION**

For the following reasons, it is respectfully recommended that the Court deny Plaintiff Maya Stephens' "Emergency Motion for Temporary Relief to Enforce Status Quo and Immediate Reinstatement of School Access," ECF No. 103. It is further recommended that the Court deny Ms. Stephens' Motion to Maintain Educational Enrollment, ECF No. 14; and deny her Motion to Expedite Ruling Due to Ongoing Educational Deprivation and Federal Violation, ECF No. 121.

II.  **REPORT**

   A.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Maya Stephens ("Ms. Stephens"), brings this action *pro se* with her minor daughters L.S. and M.S. (collectively, "Plaintiffs") against Gateway School District ("Gateway"), local and state educational agencies and employees, and counsel acting on their behalf.[1] ECF No. 92. Ms. Stephens alleges that Defendants violated Plaintiffs' rights under the McKinney-Vento

---

[1] On July 15, 2025, the Court granted Ms. Stephen's Motion for Appointment of Counsel for her daughters. ECF No. 97. The Court's request for pro bono counsel remains pending while the Clerk's Office seeks volunteer counsel. Due to the allegedly exigent circumstances surrounding Ms. Stephens' pending motions for injunctive relief and her ability to pursue claims on her own behalf, the stay currently in effect during the search for counsel for her children is lifted solely as to Ms. Stephens and the motions considered at this time.

Homeless Assistance Act, 42 U.S.C § 11431, *et seq.*, ("McKinney-Vento Act"), denied them due process, unlawfully retaliated, defamed her and her children, and caused her children to suffer emotional distress. Id. Plaintiffs' claims arise out of Gateway's determination that the Stephens' children are not homeless, do not reside in Gateway, and are not entitled to the protection afforded by the McKinney-Vento Act. As a result, L.S. and M.S. were subject to disenrollment under applicable Pennsylvania law.

Section 1302(a) of the Pennsylvania Public School Code states that "[a] child shall be considered a resident of the school district in which his parents or the guardian of his person resides." 24 Pa. Cons. Stat. § 13-1302(a). The purpose of the residency provision is to prevent "school shopping." Velazquez ex rel. Speaks-Velazquez v. E. Stroudsburg Area Sch. Dist., 949 A.2d 354, 360 (Pa. Commw. Ct. 2008) (citing Paek v. Pen Argyl Area Sch. Dist., 923 A.2d 563, 567 (Pa. Commw. Ct. 2007)). The McKinney-Vento Act provides a limited exception to this rule to ensure that unhoused children "have equal access to the same free, appropriate public education, … as provided to other children and youths." 42 U.S.C. § 11431(1).

Ms. Stephens alleges that with her, L.S. and M.S. have suffered prolonged housing instability since relocating to the Pittsburgh area in 2016. In 2021, L.S. and M.S. were residing in "doubled-up housing" at Ms. Stephens' mother's residence in the Gateway School District.[2] Id. ¶ 2. Based on their living conditions, Gateway deemed L.S. and M.S. eligible for enrollment under the McKinney-Vento Act.

Ms. Stephens asserts that during the 2023-2024 academic year, she secured "her own temporary housing" at 758 Second Street, Verona, Pennsylvania, with a month-to-month lease in

---

[2] The McKinney-Vento Act includes within the definition of protected children those "who lack a fixed, regular, and adequate nighttime residence…; and … includes— … children and youths who are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason." 42 U.S.C. § 11434a(2).

the Riverview School District. Id. ¶ 3; see also ECF Nos. 107-1, 107-2. Ms. Stephens alleges that despite a month-to-month lease, her housing "remained unstable," so L.S. and M.S. remained at their grandmother's home. ECF No. 92 ¶ 3. To facilitate transportation, Gateway requested Ms. Stephens' address. Id. ¶ 4. Based on the information Ms. Stephens provided, Gateway began an investigation to determine whether L.S. and M.S. were eligible for enrollment under the McKinney-Vento Act. Id. ¶ 5. Sometime in May-June 2024, Ms. Stephens challenged the safety of transportation for her children from their assigned school to her Verona residence. Id. ¶ 7. On June 3, 2024, Gateway informed Ms. Stephens that it determined she had secured fixed, regular, and adequate housing. Thus, L.S. and M.S. no longer qualified for continued enrollment under the McKinney-Vento Act. Id.

The McKinney-Vento Act requires each state to adopt "[a] description of procedures for the prompt resolution of disputes regarding the educational placement of homeless children and youths." 42 U.S.C. § 11432(g)(1)(C). When a dispute arises, a local agency or school district must provide written notification of the decision, set forth the right to appeal the decision and a contain a referral to the local educational agency liaison who is to carry out the dispute resolution process as quickly as possible. 42 U.S.C. § 11432(g)(3)(E)(ii)-(iii). During the pendency of an eligibility dispute, the McKinney-Vento Act requires that children "be immediately enrolled in the school in which enrollment is sought, pending final resolution of the dispute, including all available appeals." 42 U.S.C. § 11432(g)(3)(E)(i) (the "Pendency Provision").

Ms. Stephens initiated an appeal with the Pennsylvania Department of Education ("PDE") and Defendant Storm Camara, PDE's State Coordinator for Homeless Children and Youth. ECF No. 92 ¶ 8. It is undisputed that based on Ms. Stephens' representations, L.S. and M.S. were deemed eligible to continue their education in the Gateway School District on August 27, 2024,

and were reenrolled pursuant to the McKinney-Vento Act. ECF No. 72-1 at 2; ECF No. 1-15 at 5 (correspondence from PDE dated August 27, 2024). However, Gateway challenged continued enrollment based on the veracity of Ms. Stephens' representations related to housing permanence. Id.; see also ECF No. 92 ¶¶ 10-11. After investigating, Gateway learned that Ms. Stephens had leased the Verona premises since at least January 1, 2024. See ECF No. 1-8 at 5-10. Thus, Gateway provided notice to Ms. Stephens on November 8, 2024, advising her that continued enrollment was denied. ECF No. 1-15 at 2-3. In compliance with the requirements of the McKinney-Vento Act, Gateway advised Ms. Stephens of her appeal rights and the contact information for Pennsylvania's McKinney-Vento Homeless state coordinator.[3] Id.

Ms. Stephens commenced an appeal, but based on the information from Gateway, including Ms. Stephens' lease for the Verona premises in the Riverview School District ("Riverview"), the PDE coordinator informed Ms. Stephens that because she falsified the information supporting the August 27, 2025 decision, it was clear that L.S. and M.S. were not homeless and thus no longer eligible for continued enrollment in the Gateway School District. ECF No. 92 ¶¶ 12-13.[4] Ms. Stephens contends that in reaching this decision, Gateway and PDE violated the procedures required by the McKinney-Vento Act.

On November 14, 2024, Gateway's Solicitor notified Ms. Stephens that L.S. and M.S. would be disenrolled. Id. ¶ 13. Ms. Stephens alleges that she appealed the residency determination,

---

[3] The PDE's McKinney-Vento Act dispute resolution process is set forth at:
https://www.pa.gov/agencies/education/programs-and-services/instruction/elementary-and-secondary-education/homeless-education/dispute-resolution-process

[4] Ms. Stephens also presents an invoice submitted by Riverview to Gateway for reimbursement of transportation expenses for 162 days from the leased Verona premises for the 2023-2024 school year. ECF No. 1-15 at 7.

4

and that Gateway reenrolled L.S. and M.S. Id. ¶ 14. Reenrollment was in accordance with the provisions of both the McKinney-Vento Act and Act 67.[5]

Gateway held a residency hearing on November 26, 2024. Id. ¶ 16; see also ECF No. 1-19 at 1-3. On January 27, 2025, the School Board considered the Findings of Fact, Conclusions [of] Law and Adjudication issued by the Hearing Officer and the President of the School Board. ECF No. 80-2 at 2-6. The adjudication reflects that for purposes of McKinney-Vento, PDE provided notice that the "students were not considered homeless under the McKinney-Vento Act and therefore do not receive any protections under that Act." Id. at 3. The Hearing Officer concluded that she did "not have jurisdiction over any McKinney-Vento issues, and accepts the determination regarding the same made by the Department of Education. Any challenges relating to that determination rest with the procedural safeguards of McKinney Vento, which the Parent was provided." Id.

---

[5] The referenced statute, 24 Pa. Cons. Stat. § 13-1302-2, was amended in 2024, effective September 16, 2024. See 2024, July 17, P.L. 810, No. 67 § 1. As amended, and in compliance with the McKinney-Vento Act, Pennsylvania's Public School Code ensures that unhoused children are not disenrolled until:

> (1) the parents, guardians or any other person having charge or care of the child are provided an opportunity to appeal the decision through a hearing held pursuant to an appropriate grievance policy of the school district and any appeal has been exhausted;
>
> (2) after the parents, guardians or any other person having charge or care of the child have been provided notice of such a hearing, the parents, guardians or other person having charge or care of the child decline to participate in a hearing pursuant to the appropriate grievance policy of the school district or appeals process;
>
> (3) after the parents, guardians or any other person having charge or care of the child have been provided information from the school district's liaison for homeless children and youth regarding the educational rights of homeless students under 42 U.S.C. § 11431 (relating to statement of policy). Information provided under 42 U.S.C. § 11431 shall be provided in a manner and form understandable to the parents, guardians or any other person having charge or care of the child; or
>
> (4) a court enters an order directing the child to be disenrolled and enrolled in a different school.

24 Pa. Cons. Stat. § 13-1302.

During the Act 67 residency hearing, Gateway admitted surveillance evidence and a copy of Ms. Stephens' January 1, 2024 lease. ECF No. 92 ¶ 20. Evidence presented also confirmed that while L.S. and M.S. "spend time at their maternal grandmother's house, [they] do not reside there, and the maternal grandmother does not share legal guardianship with Parent." ECF No. 80-2 at 4.

Ms. Stephens alleges that on Wednesday, November 27, 2024, Gateway improperly terminated transportation.[6] ECF No. 92 ¶ 25. Transportation was reinstated on December 12, 2024, but in the interim, she alleges that she suffered employment loss. Id. ¶ 26.

The Gateway School Board adopted the Hearing Officer's findings of fact and conclusions of law and finalized disenrollment on January 27, 2025. ECF No. 72-4 at 6. Notification of the decision was served on Ms. Stephens on January 31, 2025. The notice set forth her right to appeal within 30 days to the Court of Common Pleas of Allegheny County. Id. Ms. Stephens asserts that Gateway improperly disenrolled L.S. and M.S. effective Friday, February 28, 2025, thirty days from the date of the School Board's ruling, but not thirty days from the date of notice to her. She filed her appeal on Monday, March 3, 2025.[7] Id. at 1. In her appeal, Ms. Stephens challenged the

---

[6] The Court takes judicial notice of Gateway's published academic calendar for the 2024-2025 school year that reflects school was closed for the Thanksgiving holiday on Thursday, November 27, 2024 and Friday, November 29, 2024, and resumed on December 2, 2024. See https://resources.finalsite.net/images/v1727819831/gatewayschoolsorg/kkasgct0hrwvbanr0ghv/2024-2025schoolcalendar.pdf

[7] Ms. Stephens asserts that the appeal period ran from January 31, 2025, the date of mailing, and therefore her March 3, 2025 appeal was timely. ECF No. 92 at ¶ 28; see also 42 Pa. Cons. Stat. § 5571(b) ("Except as otherwise provided in subsections (a) and (c) and in section 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.), an appeal from a tribunal or other government unit to a court or from a court to an appellate court must be commenced within 30 days after the entry of the order from which the appeal is taken, in the case of an interlocutory or final order"); and see 42 Pa. Cons. Stat. §5572 (the date of service of an order of a government unit, which shall be the date of mailing if service is by mail, shall be deemed to be the date of entry of the order for the purposes of this subchapter"). The Court takes judicial notice that the 30-day appeal period from the School Board's disenrollment determination ran to Sunday, March 2, 2025, thirty days from the date of the letter notifying Ms. Stephens of the decision. Thus, her appeal filed on Monday, March 3, 2025, appears timely See ECF No. 72-2 at 3.

School Board's disenrollment on several grounds, including alleged violations of the McKinney-Vento Act Pendency Provision. Id. at 4.

After service of the appeal and pursuant to Act 67, Gateway reenrolled L.S. and M.S. on March 5, 2025. ECF No. 92 ¶ 29. The Court of Common Pleas scheduled a hearing to be held on May 20, 2025, and rescheduled the hearing for June 20, 2025, at Ms. Stephens' request. See Stephens v. Gateway, S.A. 25-00106 (Court of Common Pleas, Allegheny County) (Dkt. 8, 11, 12). The 2024-2025 school year concluded on June 3, 2025. On June 11, 2025, Ms. Stephens voluntarily discontinued her statutory appeal, thereby abandoning any state court challenge to the alleged premature disenrollment under Act 67 and the McKinney-Vento Act, and making Gateway's January 27, 2025 residency decision final. Id. (Dkt. 13); see also ECF No. 43 ¶ 10.

The instant federal action remained pending during the litigation of Ms. Stephens' state court residency appeal. On June 6, 2025, the undersigned conducted a status conference to determine Ms. Stephens' interest in the appointment of counsel given her lack of standing to represent her children, and to determine the status of enrollment for the 2025-2026 school year. ECF Nos. 58, 75. Ms. Stephens declined the appointment of counsel and represented that she enrolled her daughters in a cyber school unaffiliated with either Gateway or Riverview. She also stated that her son remained enrolled in Riverview, but was waitlisted for enrollment at Penn Hills School Charter School. ECF No. 75 at 17, 19, 28. She claimed that her housing remained unstable, and that she anticipated moving. Id. at 6. Counsel for Gateway acknowledged pending landlord/tenant litigation that may result in eviction.

Ms. Stephens asserts that she received notice from Gateway on August 20, 2025, informing her that under Act 67, L.S. and M.S. "would be" disenrolled. ECF No. 113 ¶ 31. She also received an automated attendance email and text message from Gateway on September 2, 2025, and alleges

7

that the children were "enrolled in Cyber with Gateway School District." Id. ¶ 33. On September 3, 2025, Ms. Stephens received correspondence from Gateway informing her that her request to enroll L.S. and M.S. pursuant to the McKinney-Vento Act was denied. ECF No. 113-5. As reflected in the letter, "[t]he District's position that your daughters are not residents of Monroeville or Pitcairn and have fixed, regular and night-time housing at 758 Second Street, Verona PA 15147 has not changed. You are the custodial parent of both [L.S. and M.S.], and you have clearly maintained a residence in Verona Borough since such time." Id.

On September 26, 2025, Ms. Stephens applied for enrollment at the PA Distance Learning Charter School. ECF No. 113-6. The school advised her of the documents necessary to complete enrollment in time for the "next scheduled start date" on October 8, 2025. Id. Unfortunately, Ms. Stephens failed to complete enrollment for her children in Riverview or a cyber program of her choosing at Riverview's expense. Thus, as of October 8, 2025, the children have not attended school for the 2025-2026 school year. ECF No. 121.

Ms. Stephens is also engaged in a landlord/tenant dispute for her residence at 758 Second Street, Verona, Pa. Bosco v. Stephens, LT 25-1303 (Court of Common Pleas – Arbitration Division, Allegheny County).[8] In that litigation, Ms. Stephens admits that she signed a lease for a three-bedroom duplex on February 22, 2023, for a term set to expire on December 31, 2023. Id.

---

[8] Courts may take judicial notice of public records, including court proceedings, not for the truth of its contents, but as evidence of the information provided there. See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426–27 (3d Cir. 1999) (collecting cases). The court may therefore look to the existence of other judicial proceedings to see if they "contradict[ ] the complaint's legal conclusions or factual claims." Id. at 427. Further, "at the preliminary injunction stage, 'procedures [ ] are less formal and evidence [ ] is less complete than in a trial on the merits.'" … Accordingly, a court 'may rely on affidavits and hearsay materials which would not be admissible evidence.'" A.P.I. Inc. v. Broadway Elec. Serv. Corp., 673 F. Supp. 3d 714, 718 (W.D. Pa. 2023) (quoting Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 718 (3d Cir. 2004), in turn quoting Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995)). "But the weight given to such materials will 'vary greatly depending on the facts and circumstances of a given case.'" Id. Here, the Court will consider all materials filed on the docket of this matter as well as Ms. Stephens' statements in her state court landlord/tenant and residency disputes, as it is undisputed that these matters are interrelated with the claims at issue here.

(Dkt. 10, Exhibit 1; Dkt. 20 ¶¶ 7, 8). She also admits to "taking possession of the property on February 23, 2023." Id. (Dkt. 20 ¶ 9). The parties renewed the lease on January 1, 2024, but converted the lease to a month-to-month tenancy. Id. (Dkt. 10, Exhibit 2). Thus, Ms. Stephens' filings make clear that she has not been homeless or in unstable housing since at least February 2023. As for her children, Ms. Stephens proffered exhibits in the landlord/tenant action that confirm that she resides at the Verona premises with her three children. Id. (Dkt. 10 at 25, 35). Her verified Emergency Motion for Extension to Obtain Supersedeas filed in that action also confirms that Ms. Stephens resides at the Verona premises with all three of her children.

> I am a Snap benefits recipient. I am also seeking employment because dealings with my landlord cost me my employment back in Dec. I am self employed while seeking employment but I have only been receiving $1000 a month and sometimes less. I have 3 children that live in the home with me as well. I do not have a dime to my name to pay toward Supercedes today.

**VERIFICATION**

I, Maya Stephens, certify that the facts contained in the foregoing Motion are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are subject to the penalties of 18 Pa.C.S. §4904 related to unsworn falsification to authorities.

8/18/2025
Date

Maya Stephens
Signature

Id. (Dkt. 4). Thus, as sworn to by Ms. Stephens, L.S. and M.S have had a fixed, regular, and adequate nighttime residence with their mother since at least February 2023 and are not homeless as defined by the McKinney-Vento Act.

Turning to Ms. Stephens' pending motion for preliminary injunctive relief in this action, pursuant to Federal Rule of Civil Procedure 65, she requests that the Court order Gateway to reenroll L.S. and M.S. and facilitate their enrollment at School District expense in the PA Distance Learning Charter School, an independently operated cyber school. ECF No. 103. Id.; see also ECF No. 113-6. Ms. Stephens' asserts that her children's housing situation has not changed since the 2024-2025 school year. Thus, she claims she is entitled to immediate injunctive relief to enforce Gateway's pendency obligations under the McKinney-Vento Act. Id.

In response, Gateway argues that residency issues under the McKinney-Vento Act have been fairly and finally determined against the Stephens' family and that the statutory appeal process has concluded. ECF No. 107. Thus, Gateway contends it has no obligation to enroll her children in cyber school at School District expense. Instead, her children should be enrolled in Riverview, where the family resides, and where she can apply for attendance at a cyber school.

**B.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 65(a) provides that a court may issue a preliminary injunction upon notice to the adverse party. "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)). Accordingly, "[a] party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the

nonmoving party; and (4) that the public interest favors such relief." Id. (quoting Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)). If the first two "gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017).

"[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 197 (3d Cir. 1990) (citation and quotation omitted). However, "where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP, 528 F.3d 176, 179 (3d Cir. 2008) (citing Tom Doherty Associates, Inc. v. Saban Ent., Inc., 60 F.3d 27, 33–34 (2d Cir. 1995)).

In this case, the parties dispute the burden of proof based on a challenge to the status quo for enrollment in Gateway. Ms. Stephens asserts that as of September 3, 2025, the children were enrolled in Gateway. Thus, the status quo is continued attendance. Gateway counters that the status quo is the January 31, 2025, notice of disenrollment, made final on June 11, 2025, when Ms. Stephens discontinued her state court appeal. It is ultimately not necessary for the Court to resolve this dispute because the evidence overwhelmingly supports the conclusion that Ms. Stephens cannot show that she is likely to prevail on her injunctive relief claim premised on her argument that her children are homeless.

C.  **DISCUSSION**

1.  **Likelihood of Success on the Merits**

The first factor requires that Ms. Stephens demonstrate that the likelihood of success on the merits is "significantly better than negligible but not necessarily more likely than not." Reilly, 858 F.3d at 179 (citing Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011) (en banc); and citing Nken v. Holder, 556 U.S. 418, 434 ("It is not enough that the chance of success on the merits be better than negligible[,]" and "more than a mere 'possibility' of relief is required.")).

Upon review of the record before the Court and the dockets of related litigation, Ms. Stephens is collaterally estopped from relitigating residency. Even if collateral estoppel does not apply, she cannot show that there is more than a "mere possibility" that she is entitled to relief.

Evaluating whether issue preclusion applies requires the Court to apply Pennsylvania law. In re: Adams, 151 F.4th 144, 153 (3d Cir. Sept. 3, 2025) (precedential) ("principles of full faith and credit, ... as codified at 28 U.S.C. § 1738, require federal courts to 'give the same preclusive effect to a state court judgment as another court that state would give'") (quoting Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 283 (2005)). See also Allen v. State Corr. Inst. at Somerset Dept. of Corr., No. 23-cv-262, 2025 WL 964550, at * 4 (W.D. Pa. Mar. 31, 2025) (citing Swineford v. Snyder Cnty., Pa., 15 F.3d 1258, 1266 (3d Cir. 1994) (in turn, citing 28 U.S.C. § 1738)). The Pennsylvania Supreme Court has identified the following factors to determine whether issue preclusion will apply:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

Id. (citing Metro. Edison Co. v. Pennsylvania Pub. Util. Com'n, 767 F.3d 335, 351 (3d Cir. 2015), in turn quoting Office of Disciplinary Counsel v. Kiesewetter, 585 Pa. 477, 889 A.2d 47, 50–51 (2005)).

Pennsylvania extends issue preclusion to proceedings conducted when "an agency is acting in a judicial capacity and resolves disputed issues of fact that the parties had an opportunity to fully litigate." J.S. v. Bethlehem Area Sch. Dist., 794 A.2d 936, 940 (Pa. Commw. Ct. 2002), *alloc. den.*, 818 A.2d 506 (Pa. 2003) (Table) (citing Grant v. GAF Corp., 608 A.2d 1047 (Pa. Super. Ct. 1992), *aff'd sub nom.*, Gasperin v. GAF Corp., 639 A.2d 1170 (Pa. 1994)).

Here, the record reflects that Gateway's counsel notified Ms. Stephens that an Enrollment Hearing was scheduled for Tuesday, November 26, 2024 to determine whether she maintained a fixed residence outside the district. ECF No. 1-19 at 1. She was advised that she could be represented by counsel and that she would have the opportunity to call witnesses and present any relevant evidence, as well as have an opportunity to cross-examine any witnesses. Id. Ms. Stephens was further advised that if she could not afford counsel, she could request an attorney by contacting the Court of Common Pleas of Allegheny County or the Pennsylvania Lawyer Referral Service. Id.

Based on the evidence presented during the hearing, the Hearing Officer determined that Gateway met its burden to prove that Ms. Stephens does not reside within school district boundaries and the children "spend time at their grandmother's house, but do not reside there." ECF No. 72-1 at 3-4. Further, based on Gateway's investigation, the children were not homeless, and Ms. Stephens had a permanent residence in Verona. The findings of fact and conclusions of law were adopted by the School Board on January 27, 2025, and Ms. Stephens exercised her right to appeal both the resolution of her residency claim and her McKinney-Vento claim to the Court

of Common Pleas of Allegheny County. ECF Nos. 72-2, 72-3. In her appeal, she set forth grounds for reversal based on alleged due process violations in the admission of evidence and testimony and set forth her challenge to the decision for failure to maintain enrollment for the 2024-2025 school year in accordance with the McKinney-Vento Act. Ms. Stephens' subsequent voluntary dismissal of her statutory appeal on June 11, 2025, renders the agency adjudication final on the merits. Stephens v. Gateway, S.A. 25-00106 (Court of Common Pleas, Allegheny County) (Dkt. 13)

Even if collateral estoppel did not apply, Ms. Stephens cannot show that there is more than a mere likelihood that she would prevail in establishing that her children were homeless for the 2025-2025 school year, or that they are homeless for eligibility under the McKinney-Vento Act.

There is no dispute that a school district is "required to continue a homeless child's education in her or her school of origin for the duration of his or her homelessness if doing so in the child's best interest." G.S. by J.S. v. Rose Tree Media Sch. Dist., 914 F.3d 206, 210 (3d Cir. 2018) (citation modified, internal quotation marks and cites omitted). And there is no dispute that there is no statutory limit on the duration of homelessness. Id. But unlike the facts presented in Rose Tree Media Sch. Dist., the evidence in the instant case reflects a change in living arrangements in 2023, including long-term stability of a residence outside Ms. Stephens' preferred school district, enrollment of a sibling in the school district of residence (Riverview), and a PDE determination that the students are not homeless. Thus, enforcement of Pennsylvania's enrollment requirements is warranted as is a cessation of protections under the McKinney-Vento Act because L.S. and M.S. are not homeless.

In summary, the record including publicly available dockets in the state court landlord/tenant litigation – including Ms. Stephens' own verified statements – make clear that

since at least February 23, 2023, she has maintained a fixed, regular, and adequate nighttime residence in Verona and has resided there with her children since at least January 1, 2024, and certainly at the time of filing her pending motion. Thus, the conditions that supported Gateway and PDE's initial homeless determination do not exist, and she cannot show that she is likely to prevail on the merits of her action that her children were (or are) homeless under the McKinney-Vento Act.

### 2. Irreparable Harm

Ms. Stephens bears the burden to show that Plaintiffs will suffer irreparable harm in the absence of preliminary relief. Reilly, 858 F.3d at 180 n.5. "Irreparable harm is harm that 'cannot be redressed by a legal or an equitable remedy following a trial.'" Plummer v. Dancha, No. 24-2294, 2025 WL 1950067, at *2 (3d Cir. July 16, 2025) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)). "The harm must be immediate and not speculative." Id. (citing Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992); Adams v. Freedom Forge Corp., 204 F.3d 475, 488 (3d Cir. 2000)).

When it comes to education, "interruption of a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury." N.J. v. New York, 872 F. Supp. 2d 204, 214 (E.D.N.Y. 2011) (quoting Ross v. Disare, 500 F. Supp. 928, 934 (S.D.N.Y. 1977)). See also L.R. ex rel. G.R. v. Steelton-Highspire Sch. Dist., No. 1:10-CV-00468, 2010 WL 1433146, at *3 (M.D. Pa. Apr. 7, 2010) ("Pennsylvania state courts have recognized, "deprivation of educational rights can produce irreparable harm and establishes a need for prompt and immediate relief.") (citations omitted).

Here, however, Ms. Stephens cannot establish that under the circumstances alleged, her children will suffer irreparable harm in the absence of the requested preliminary relief. Ms. Stephens asserts that she seeks immediate enrollment for her children in the PA Distance Learning Charter School. ECF No. 103, ECF No. 113 ¶ 37. However, she faces no impediments to enrollment through Riverview, where she and the children reside. Pennsylvania law requires when a child is enrolled in a cyber charter school, the school district where the student resides must provide funding for cyber education and provide student records to facilitate placement. See 24 Pa. Cons. Stat. § 17-1725-A (Funding for Charter Schools); 24 P. Cons. Stat. § 17-1744-A (School District Responsibilities). To the extent Ms. Stephens asserts that internet access through Riverview is inconsistent, she offers no evidence in support. Thus, Ms. Stephens fails to carry her burden to show that the denial of the requested immediate injunctive relief would result in irreparable harm. Instead, she is solely responsible for the alleged harm suffered by her children because she refuses to enroll them in Riverview, where they reside.

3.  **Remaining factors**

Because Ms. Stephens fails to show a likelihood of success on the merits of her claim or that denial of the requested relief will result in irreparable harm, the Court need not address the remaining preliminary injunction factors. Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 374 (3d Cir. 2012).

D.  **CONCLUSION**

At this stage of the litigation, and as explained above, Ms. Stephens has not met the burden to show that she is entitled to the extraordinary preliminary relief requested. Thus, it is recommended that the Court deny her Motion for Temporary Relief to Enforce the Status Quo and Immediate Reinstatement of School Access, ECF No. 103, her Motion to Maintain Educational

Enrollment, ECF No. 14, and her Motion to Expedite Ruling Due to Ongoing Educational Deprivation and Federal Violation, ECF No. 121.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections within fourteen days, or seventeen days for unregistered ECF Users. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within 14 days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: October 15 , 2025

cc:   The Honorable Cathy Bissoon
      United States District Judge

      All counsel of record by Notice of Electronic Filing